**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

O

JS-6

**CIVIL MINUTES – GENERAL**

Case No. EDCV 14-0504-DOC (DTBx)            Date: August 7, 2014

Title: CARLOS ALVARADO ET AL. V. PACIFIC MOTOR TRUCKING COMPANY ET AL.

PRESENT:     THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**     **ORDER GRANTING MOTION TO DISMISS [15]**

Before the Court is Defendant's Motion to Dismiss, or, in the Alternative, Compel Arbitration and Stay Proceedings (Dkt. 15). The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After reviewing the moving and opposing papers, the Court GRANTS Defendant's Motion to Dismiss.

**I. BACKGROUND**

    **A. Factual Background**

Carlos Alvarado, Alan Childs, William Frogue, David Kee, Ross Kershner, Rafael Marroquin, Jesse Medina, David Molina, Frank Montez, Carl Morgan, Jesse Napoles Alfonso Reyes, Carlos Romero, and Leobardo Zepedo (collectively, "Plaintiffs") were employed by Defendant Pacific Motor Trucking Co. ("Pacific Motor Trucking") as long-haul truck drivers. Compl. ¶ 20. Pacific Motor Trucking is the oldest car-carrying trucking company in the United States, and it maintains major transportation terminals throughout the country. *Id.* ¶ 21. Around 2006 or early 2007, needing to replace the existing trucks, Pacific Motor Trucking created an owner-operator program to allow

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 14-0504-DOC (DTBx)                                Date: August 7, 2014
                                                                                                                     Page 2

drivers to purchase their own trucks, each of which cost over $200,000, in exchange for a portion of the revenue generated. *Id.* ¶¶ 22-23, 26.

Randy Beggs, Terminal Manager of Pacific Motor Trucking's Riverside terminal, presented the program at a series of company meetings throughout December 2006 and January 2007. *Id.* ¶ 23. He told Plaintiffs that, if they purchased their own trucks, Pacific Motor Trucking would continue to supply union benefits and provide maintenance at its shop at reduced rates. *Id.* If Plaintiffs chose to return to their former employee-driver positions, Pacific Motor Trucking would purchase the trucks from Plaintiffs or help Plaintiffs resell the trucks. *Id.* Beggs also represented that this partnership would be a "long-term relationship," and Plaintiffs would earn four to five times their weekly pay as a result. *Id.* ¶ 24. Beggs knew that, as a result of the program, Plaintiffs would incur substantial debt to pay for the trucks. *Id.* ¶¶ 23-24. While making these representations, Beggs did not present Plaintiffs with copies of the contract. *Id.* ¶ 25. Instead, Beggs told Plaintiffs that the payment rates constituted trade secret information. *Id.* Approximately 40 truckers relied on Begg's statements in opting to participate in the program. *Id.* ¶ 26.

Plaintiffs did not see the Operating Agreement and Equipment Lease ("Lease Agreement") until after they ordered the new truck and made a down-payment of several thousand dollars. *Id.* When they did see the contract, after the trucks had been custom-built, Plaintiffs could not back out with losing their substantial down-payment and risk damaging their credit for reneging on their purchase loans. *Id.* The Lease Agreements were finally signed in or around the spring of 2007. *Id.* ¶ 27.

On February 16, 2009, Pacific Motor Trucking cancelled all owner-operator agreements, rendering Plaintiffs unable to operate their trucks under the Lease Agreement after 30 days. *Id.* ¶ 28. Pacific Motor Trucking then purchased the trucks of many owner-operators, as per the Lease Agreement, but it failed to extend this offer to Plaintiffs. *Id.*

      **B.**        **Arbitration Provision**

The Lease Agreement contains an arbitration provision requiring that "[a]ny disputes arising out of the interpretation, performance or application of the provisions of this Agreement shall be arbitrated and resolved under the grievance procedures set forth in the National Automobile Transporters Agreement . . . and any applicable local labor agreement." Migliarini Decl. ¶ 4, Ex. C & Ex. D at Section 8.06. The controlling National Master Automobile Agreement provides for joint arbitration committees and allows both parties to present evidence and witnesses. Migliarini Decl. ¶ 4, Ex. D at Section 8.06

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 14-0504-DOC (DTBx)                            Date: August 7, 2014
                                                                                                                  Page 3

## II. LEGAL STANDARD

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction to adjudicate the claims. A 12(b)(1) motion is an appropriate mechanism to enforce an arbitration provision. *GT Sec., Inc. v. Klastech GmbH*, C-13-03090, 2014 WL 2928013, at *17 (N.D. Cal. June 27, 2014); *Filimex, L.L.C. v. Novoa Invs., L.L.C.,* No. CV 05–3792, 2006 WL 2091661, at *2 (D. Ariz. July 17, 2006). "Rule 12(b)(1) is appropriate for dismissing claims subject to arbitration because it 'is a flexible rule' that often serves as a vehicle for raising residual defenses and the Federal Arbitration Act requires only that a party "petition" the court for an order directing arbitration to proceed." *GT Sec.*, 2014 WL 2928013, at *17 (citing *Filimex*, 2006 WL 2091661, at *2). A challenge to the enforceability of an arbitration provision must be left to the court. *Ben & Jerry's Franchising, Inc. v. Porghavami*, CV 07-2599, 2008 WL 744722 (E.D. Cal. Mar. 14, 2008) (citing *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 449 (2006)).

Once subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "the party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists"). Accordingly, the court will presume lack of subject matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A defendant may challenge the court's jurisdiction facially or factually. *GT Sec.*, 2014 WL 2928013, at *18 (citing *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000)). In a facial attack, the moving party asserts that the lack of federal subject matter jurisdiction appears on the "face of the pleadings." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Subject matter jurisdiction is challenged solely on the allegations in the complaint, attached documents, and judicially noticed facts. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In the case of a facial attack, the court is required to accept as true all factual allegations set forth in the complaint. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005).

In contrast, a factual attack (or a "speaking motion") is one in which subject matter jurisdiction is challenged as a matter of fact, and the challenger "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In assessing the validity of a factual attack, the court is not required to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 14-0504-DOC (DTBx)  Date: August 7, 2014
Page 4

presume the truth of the plaintiff's factual allegations. *Id.* Rather, the court evaluates the allegations by reviewing evidence outside of the pleadings. *Safe Air*, 373 F.3d at 1039. The plaintiff must respond to the motion by presenting evidence to support the court's jurisdiction. *GT Sec.*, 2014 WL 2928013, at *18 (citing *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 n.2 (9th Cir.2003)).

### B. Federal Arbitration Act

The Federal Arbitration Act ("FAA") governs the enforceability of written arbitration provisions in certain contracts involving interstate commerce. *See* 9 U.S.C. § 1, *et seq.*; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-26 (1991). A party seeking to compel arbitration under the FAA has the burden to show: (1) the existence of a valid, written agreement to arbitrate in a contract; and (2) that the agreement to arbitrate encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also* 9 U.S.C. § 2.

Due to the liberal policy favoring arbitration, doubts as to whether a claim is covered by an arbitration agreement "should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (citations omitted). "Although it is often said that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 740 (7th Cir. 2010). Thus, "[a]ny 'preference' for arbitration is reserved for the interpretation of the scope of a valid arbitration clause." *Id.* The "liberal federal policy regarding the scope of arbitrable issues is inapposite" to the first prong of the FAA test: the existence of a valid, written agreement to arbitrate in contract. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006); *see also Bd. of Trs. of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Global Mkts, Inc.*, 622 F.3d 1335, 1342 (11th Cir. 2010) ("Contrary to the suggestion of [movant], we resolve this issue without a thumb on the scale in favor of arbitration because the federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.") (citations omitted); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002) ("The presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement; however, this presumption disappears when the parties dispute the existence of a valid arbitration agreement."); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) ("[The] federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound.") (citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 14-0504-DOC (DTBx)                      Date: August 7, 2014
                                                                                         Page 5

The policy favoring arbitration applies to the scope of the arbitration agreement because the FAA reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *See AT & T Mobility LLC v. Concepcion*, — U.S. —, 131 S. Ct. 1740, 1745 (2011) (citations omitted); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989) ("[The FAA] requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.").

### III. ANALYSIS

#### A. Arbitration Provision

##### 1. 9 U.S.C. § 1

Plaintiffs argue that the dispute is exempt from arbitration under the exception provided by the FAA. The Court finds that the Lease Agreement does not meet the criteria for the exception, and therefore the dispute is subject to arbitration.

The FAA provides an exception to arbitration agreements under 9 U.S.C. § 1, explaining that the FAA does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court has explicitly limited this exception to "contracts of employment of transportation workers." *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Plaintiffs argue that, as truck drivers, they are exempted from the arbitration requirement. The Court agrees that truck drivers, in general, are workers in interstate transportation as intended in 9 U.S.C. § 1. *See Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351 (8th Cir. 2005) (describing that a truck driver, but not a customer service representative, would be considered a transportation worker under § 1 of the FAA).

However, "[a] split of authority has developed about the meaning of 'contract of employment' in the context of owner-operators." *Owner-Operator Indep. Drivers Ass'n., Inc. v. United Van Lines, LLC.*, 06-CV-219, 2006 U.S. Dist. LEXIS 97022, at *7 (E.D. Mo. Nov. 15, 2006). As the court in *United Van Lines* explained,

> One line of cases holds that, unless the non-moving party proves to the
> Court that the FAA does not apply, the court should apply the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 14-0504-DOC (DTBx)                                        Date: August 7, 2014
                                                                                                          Page 6

> characterization of the relationship described in the agreement and find that an owner-operator characterized as an independent contractor does not have a contract of employment with the carrier. Other cases have come to the opposite conclusion, but only one has articulated a reason for its conclusion . . . . Upon consideration, the Court adopts the [*Owner-Operator Independent Drivers Association, Inc. v. Swift Transportation Co.*, 288 F. Supp. 2d 1033, 1035–36 (D. Ariz. 2003)] standard because it effectuates the FAA's goals. *Swift*'s reasoning not only furthers the complementary policies favoring arbitration and narrowly construing the FAA's exceptions, but also provides a sound methodology, having the non-moving party prove the FAA does not apply, for determining whether an agreement qualifies as a contract of employment.

2006 U.S. Dist. LEXIS 97022, at *7–10.

       The Court adopts the reasoning of its sister court in *United Van Lines*. Here, Plaintiffs cite similarities to *Owner-Operator Indep. Drivers Ass'n v. C.R. England, Inc.*, 325 F. Supp. 2d 1252 (D. Utah 2004), but fail to explain how the Lease Agreement is a contract of employment. *See* Opp'n at 7. Therefore, like the court in *United Van Lines*, the Court finds that the Lease Agreement is not an employment contract under the FAA.

                 **2.**          **Unconscionability**

       Plaintiffs argue that the arbitration provision is unconscionable, making it unenforceable under state law. The Court disagrees.

       The Lease Agreement is governed by Missouri state law because the contract contains a choice of law provision that chooses Missouri state law. When subject-matter jurisdiction is founded upon diversity jurisdiction, "federal courts must apply the conflict-of-law principles of the forum state." *S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981). Under California conflict of law principles, a court engages in a multi-step inquiry to determine whether a contractual choice-of-law provision is valid and enforceable. *Id.* First, the court must "determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992). If either test is met, the court must then determine whether the chosen state's law is "contrary to a fundamental policy of California." *Id.* If the chosen state's law is consistent with California policy, the court will enforce the provision. *Id.* If, however, there is a fundamental conflict, the court must then decide whether California has a "materially

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 14-0504-DOC (DTBx)                          Date: August 7, 2014
                                                                                                                  Page 7

greater interest than the chosen state in the determination of the particular issue." *Id.* If the court decides that California has a materially greater interest than the chosen state, the provision will not be enforced. *Id*; *see also* Restatement (Second) of Conflict of Laws § 187 cmt. f (1971). Plaintiffs and Pacific Motor Trucking agree, as does the Court, that Missouri state law governs the interpretation of the Lease Agreement.

Under Missouri state law, a provision must be both procedurally and substantively unconscionable for it to be unenforceable. *Whitney v. Alltel Commc'ns, Inc.,* 173 S.W.3d 300, 308 (Mo. App. 2005) (citing *Funding Sys. Leasing Corp. v. King Louie Int'l, Inc.,* 597 S.W.2d 624, 634 (Mo. App. W.D.1979)). Procedural unconscionability arises from the contract formation process and generally focuses on unequal bargaining power, misrepresentations, and fine print of the contract. *Whitney*, 173 S.W.3d at 308. Substantive unconscionability, on the other hand, refers to undue harshness within the contract terms themselves. *Id.* These two forms of unconscionability are assessed on a sliding scale, such that "if there exists gross procedural unconscionability then not much [is] needed by way of substantive unconscionability." *Id.* (quoting *Funding Sys. Leasing Corp.,* 597 S.W.2d at 634).

Both forms of unconscionability may exist in an adhesion contract, where a stronger party imposes a "take it or leave it" option onto a weaker party. *Id.* An adhesion contract, however, is not per se unfair. *Swain v. Auto Servs., Inc.*, 128 S.W.3d 103, 107 (Mo. Ct. App. 2003). An arbitration provision becomes unconscionable only when an average reasonable person would not expect the dispute to be resolved through arbitration rather than through litigation. *Id.* at 107-08; *see Lawrence v. Beverly Manor*, 273 S.W.3d 525, 531 (Mo. 2009) (concurring opinion) (citing *Whitney,* 173 S.W.3d at 310 (Mo. App. 2005)) ("[A]n average individual seeking nursing home care would not reasonably expect that any personal injury claims arising out of the Nursing Home's care might have to be resolved through arbitration rather than litigation."). In *Whitney*, the court found that an adhesion contract was procedurally unconscionable where it was presented on a "take it or leave it" basis, the defendant was in a superior bargaining position, and there was no actual negotiation between the parties. 173 S.W.3d at 310.

Accepting Plaintiffs' allegations as true, the Lease Agreement is a contract of adhesion.[12] Plaintiffs did not see the contract prior to purchasing their trucks and they did

---

[1] Pacific Motor Trucking requests the Court to disregard the materials attached to Plaintiffs' Opposition in deciding the Motion under Rule 12(b)(6). The Court accepts that request but finds that the materials attached are appropriately considered on the Motion under 12(b)(1). A court may consider information outside of the pleadings on a factual dispute. In *GT Sec.*, the plaintiff responded to the motion to dismiss by presenting the court with copies of the purchase agreement, whose arbitration clause it claimed governed the dispute, thus rendering the court's exercise of subject matter jurisdiction improper. *GT Sec.*, 2014 WL 2928013, at *18. The court considered this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 14-0504-DOC (DTBx)            Date: August 7, 2014
           Page 8

not negotiate the terms of the contract, thus resembling the facts in *Whitney*. The Court finds that, despite concerns regarding Plaintiffs' sole declarant, Plaintiffs' allegations support a finding of procedural unconscionability.

       However, the Court finds that there was no substantive unconscionability. In *Niederriter v. CSC Credit Servs., Inc.*, the defendants conceded procedural unconscionability regarding an adhesion contract between a corporation and an individual. 05-CV-643, 2005 WL 2647951, at *2 (E.D. Mo. Oct. 17, 2005). The court agreed with the defendants, though, that substantive unconscionability did not exist just because the arbitrator was granted the authority to award damages, costs, and attorneys' fees. *Id.*; *see also Pleasants v. Am. Express Co.*, 06-CV-1516, 2007 WL 2407010, at *5 (E.D. Mo. Aug. 17, 2007) (finding an arbitration provision capable of providing a remedy to the plaintiff where it allowed plaintiff to choose an arbitration organization, among other terms).

       Here, while there is procedural unconscionability, the Lease Agreement is not substantively unconscionable in any way. The National Master Automobile Transporters Agreement provides the opportunity for both parties to seek relief through arbitration. *See* Migliarini Decl. ¶ 4, Ex. D. Unlike the unilateral power seen in *Manfredi v. Blue Cross & Blue Shield of Kansas City*, 340 S.W.3d 126, 134-35 (Mo. Ct. App. 2011), the nature of the joint arbitration committee and arbitration procedure does not favor either side, thereby eliminating any harshness. In the absence of substantive unconscionability, this Court, like the court in *Niederriter*, finds that the Lease Agreement is not unconscionable. In other words, the Court finds the arbitration provision in the Lease Agreement valid and enforceable.

       **3.      Dismissal**

       The Court dismisses, rather than stays, this action. The Lease Agreement provides that all disputes arising from the Lease Agreement will be resolved in arbitration. *See* Migliarini Decl. ¶ 4, Ex. C & Ex. D. "When a court determines that the entirety of a dispute is subject to arbitration, the court lacks subject matter jurisdiction and dismissal of the complaint is proper." *Swanson Restoration & Design, Inc. v. Paul Davis Restoration, Inc.*, 2007 U.S. Dist. LEXIS 96520, *15–16 (C.D. Cal. Nov. 26, 2007); *see also Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (holding that the

---

extrinsic evidence to resolve factual disputes where necessary. *Id.* Similarly, here, the Court finds it appropriate to consider the extrinsic evidence. Further, because Pacific Motor Trucking itself attaches extrinsic information to its Motion, the Court accepts Plaintiff's attachments as well in order to resolve the factual dispute.

[2] However, the Court does acknowledge significant concerns regarding the credibility of Plaintiffs' Declarant, Jesse Napoles. *See* Def.'s Ex Parte Application (Dkt. 25).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. EDCV 14-0504-DOC (DTBx)                                      Date: August 7, 2014
                                                                                              Page 9

FAA does not limit the court's authority to grant a dismissal). Here, dismissal is appropriate because the entire dispute is subject to arbitration.

## IV. DISPOSITION

Accordingly, the Court GRANTS Defendant's Motion. Plaintiffs' claims are DISMISSED WITH PREJUDICE. To the extent that any valid claims remain, they must be resolved via arbitration, in accordance with the terms of the Lease Agreement.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11
CIVIL-GEN                                                                  Initials of Deputy Clerk: jcb